FORTUNE *et al., Plaintiffs in Error*, v. FIFE.

DIVISION ONE.

1.   **Practice :** INSTRUCTIONS : HARMLESS ERROR.   A judgment will not
     be reversed for error in the instructions, where it appears that,
     under the law and the facts, no other verdict could have been ren-
     dered.

2.   **Partition:** SHERIFF : CONVEYANCE.   A deed in a partition pro-
     ceeding *held* to have been properly executed by the successor in
     office of the sheriff who made the sale.

---

Fortune v. Fife.

---

*Error to Buchanan Circuit Court.*—Hon. O. M. Spencer, Judge.

Affirmed.

*James F. Pitt* for plaintiffs in error.

(1) Payment of the purchase money to the guardian was unauthorized. The statute, Revised Statutes, 1855, section 35, page 1116, provides that the sheriff "shall" collect the money and make the deed. He must sue in his own name ( *Wiley v. Roberts*, 27 Mo. 388 ), and a payment made as in this case, without his consent, would be no defense. Rogers went into possession under a contract of purchase. *Stewart v. Garvin*, 31 Mo. 36 ; *Tull v. David*, 45 Mo. 447. And, until full payment of the purchase money, he could not assert an adverse possession. *Ridgeway v. Holiday*, 59 Mo. 453 ; *Adair v. Adair*, 78 Mo. 630. If a guardian may put the statute in motion so as to eventuate the legal title, then the sheriff's power, to say the least of it, is subordinate, and his failure or refusal to act immaterial, provided the guardian will transfer the title by limitation. *Johnson v. Noble*, 24 Mo. 253. This method of changing a minor's real estate into money is statutory ( *Gudgell v. Mead*, 8 Mo. 54 ; *Waugh v. Blumenthal*, 28 Mo. 464 ), and a species of condemnation proceedings. Implications are not indulged. *Gray v. Railroad*, 81 Mo. 135. The testimony not tending to affect the legal title was incompetent for any purpose. (2) The sheriff's deed was improperly admitted, the cotenant having no notice. *Warfield v. Lindall*, 30 Mo. 282 ; *Culver v. Rhodes*, 87 N. Y. 348. (3) Defendant's first instruction is erroneous for three reasons : *First*. It directs a verdict upon an entry in 1860, and ten years' possession from that time, at which time Mary was five years old. *Reisse v. Clarenbach*, 61 Mo. 310 ; *Gray v. Yates*, 67 Mo. 601. *Second*. It tells the jury that Rogers,

entering as a purchaser, might at once set up an adverse claim. *Crumb v. Wright*, 97 Mo. 18. *Third.* It declares that if, for ten years from 1860, "Rogers and those claiming under him did and performed such overt and notorious acts in and about said land, and the title thereto, as by their import were calculated to impart notice to plaintiff that Rogers was claiming the exclusive title, if she had used ordinary diligence in attending to her own interests, then the jury must find for defendant." (4) Defendant's second instruction was not supported. In 1872 the constructive possession of each lot purchaser was that of his title, a half interest, and for about ten years, until after 1880, this property was vacant. *Harrison v. Cachelin*, 27 Mo. 26. Besides, it is the law as between strangers. (5) Defendant's third instruction was misleading. That the devisee in McCauley's will was the wife of the plaintiff, was undisputed. The fourth ought not to have been given because it referred solely to the possession of Rogers prior to 1872. (6) The verdict was against the law and the evidence. *Long v. McDow*, 87 Mo. 197.

*D. D. Burnes, S. S. Brown, Vinton Pike* and *H. K. White* for defendant in error.

(1) Upon the theory adopted by the court below as to the effect of the sale in partition, the instructions given were correct, and, a verdict having been rendered in defendant's favor, it should not now be set aside. *Warfield v. Lindell*, 30 Mo. 282; *Warfield v. Lindell*, 38 Mo. 561; *LaPeyre v. Paul*, 47 Mo. 586. (2) The partition proceedings were the acts of the parties thereto, and the sale was a judicial sale. This sale, and the confirmation thereof, terminated the tenancy in common, and thereafter the possession of M. Rogers was that of any other purchaser adverse to the female plaintiff, and, therefore, the instructions required more of defendant than should have been required; but this

is not an error prejudicial to plaintiff. *Peutz v. Kreuster*, 41 Mo. 450 ; *Halleck v. Guy*, 9 Cal. 197; s. c., 70 Am. Dec. 643 ; *Goudy v. Shanks*, 8 Ohio, 412. (3) The report of sale and its confirmation constitute color of title which would give M. Rogers title by ten years' adverse possession, subject only to plaintiff's right to bring her suit for possession within three years after attaining her majority. *Gray v. Yates*, 67 Mo. 601 ; *Crispen v. Hannavan*, 50 Mo. 536 ; *Field v. Boynton*, 33 Ga. 239 ; *Watts v. Smith*, 19 Geo. 12. (4) M. Rogers, being the true owner of the property, his platting the property, and other acts in 1871 and afterwards, did not amount to a discontinuance of his possession. This remained in him and his alienees constructively, so that the female plaintiff might have brought suit upon attaining her majority. *Crispen v. Hannavan*, 50 Mo. 536. (5) The case admits that plaintiff would have no standing in court if the sheriff's deed contained the recital that the business had been transferred to the sheriff who made the deed. It is not objected that such order was not made. If the order had been made, it was the duty of the succeeding sheriff to make the deed. It must be inferred that it was made ; otherwise the court on September 27, 1867, would not have ordered Fish to make the deed. The deed of Fish being in evidence, the defendant is entitled to its legal effect, which is the only question to be determined respecting it. *Bartle v. O'Donoghue*, 72 Mo. 563. (6) The failure to show on the face of the deed the order transferring the unfinished business to Sheriff Fish did not make it void, and the instruction is erroneous if there was any evidence, direct or presumptive, that the order was made. *Henry v. McKerlie*, 78 Mo. 433. (7) If Sheriff Morgan died before making the deed, or for any reason could not make it, the court had power to compel his successor to make it, and the order read in evidence was a regular and valid exercise of that power. *People v. Boring*, 8 Cal. 406; *Kruse v. Wilson*, 79 Ill.

239. (8) The confirmation of the sale completed the rights and titles of the parties. Without a deed the sale and confirmation are sufficient to defeat a recovery in ejectment. *Babb v. Barnum*, 59 Mo. 399; *Long v. Joplin*, 68 Mo. 422; *Henry v. McKerlie*, 78 Mo. 416; *Gilbert v. Cooksey*, 69 Mo. 42; *Snider v. Coleman*, 72 Mo. 568; *Exendine v. Morris*, 76 Mo. 416; *Grayson v. Weddle*, 63 Mo. 523; *Price v. Association*, 101 Mo. 107. (9) The final judgment in the partition suit was just as binding upon the parties as a judgment in any other case. *Hart v. Steedman*, 98 Mo. 456.

BRACE, J.—This is an action in ejectment to recover a lot in the city of St. Joseph, commenced in the Buchanan circuit court on the eighteenth day of August, 1887. Verdict and judgment for defendant. The cause is brought here by plaintiff on writ of error.

In 1858 the plaintiff, Mary E. Fortune, and her mother, Margaret McCauley, under the will of Thomas McCauley, who died in that year, became seized in fee as tenants in common of a tract of land including the premises in controversy. Afterwards, in the same year, Mrs. McCauley sold and conveyed her interest in the land to Michael Rogers. In 1859 Rogers instituted suit againts the said Mary E., then a minor, for partition of said land. The court appointed a guardian *ad litem*, who answered for her, and the cause coming on to be heard on the first of October, 1859, a decree of partition was made, and commissioners appointed. At the next term the commissioners reported the land not susceptible of division in kind, and thereupon, on the ninth of January, 1860, the report of the commissioners was approved and the land ordered to be sold. The sale was made, and the report of the sheriff was approved on the fourteenth of April, 1860. Rogers became the purchaser, and immediately went into possession of the tract, and thereafter, until 1872, continued in the exclusive possession thereof, claiming it as his own. He

received no deed for the land, however, from the sheriff (Morgan), who made the sale, or his successor until 1867. At the March term of that year an order was made by the court in the partition cause directing the then sheriff (Fish) to execute and deliver to Rogers a deed for the land sold to him by Morgan in 1860. And on the twenty-seventh day of September, 1867, Fish, as sheriff, executed the deed in pursuance of such order.

The original papers in the case were destroyed by fire at the burning of the courthouse in 1884. In 1872, Rogers subdivided the land into lots and blocks, called the same "Roger's addition to the city of St. Joseph," executed, acknowledged and filed a plat thereof and sold the lots in dispute at public auction. Chas. B. Wilkerson became the purchaser of the lot in dispute, and received a deed from Rogers therefor. Defendant's lessor acquired Roger's title through mesne conveyances from Wilkerson, and was in possession when this suit was brought.

The court held, and so instructed the jury, that the deed made by Fish, as sheriff, to Rogers, showing that the sale therein recited was made by Morgan, sheriff, in 1860, and failing to recite an order of court transferring the unfinished business of the partition proceeding therein mentioned to the next sheriff, or to said Fish, said deed is void on its face, insufficient to convey any title to said Rogers, and is no evidence of the facts therein recited. After so holding the court submitted the question of Roger's title by ouster, and adverse possession to the jury under instructions upon that issue, given at the request of both parties. There was ample testimony to sustain the verdict of the jury upon that issue, in favor of the defendant, and we deem it unnecessary to review the instructions in view of the conclusion we have reached in regard to the validity of the deed aforesaid, for the reason that although error may have been committed in the instructions the judgment

ought not to be reversed when, upon the facts under the law, no other verdict could have been found.

The single point made against the sheriff's deed is, that it did not recite, nor was it shown that the court ever ordered sheriff Morgan to turn over to the next sheriff, or the then sheriff, the business of this partition proceeding, and it is argued that, in the absence of such an order, the court had no power to direct, and the sheriff had no power to make such deed. This contention is based upon section 37, Revised Statutes, 1855, page 1117 (G. S. 1865, sec. 36, p. 615), which provides: "That if any sale be made by any sheriff before he goes out of office, and the business be not completed when he ceases to be sheriff, he may do all subsequent acts, collect and pay over the money, and make the deed, in the same manner as if he continued to be sheriff, unless the court shall by order direct the business to be transferred to the next sheriff; in which case all acts remaining to be done by the sheriff at the date of such order shall be done by the sheriff then in office."

It will be conceded without argument that but for this section the incoming sheriff, as soon as he qualified, would be invested with full power to take charge of and execute all the business remaining unexecuted in the office of sheriff; he alone would have power to do so, and it would be the duty of the outgoing sheriff to immediately turn over all unexecuted process and business appertaining to the office to him. For obvious reasons in partition proceedings, sometimes protracted through a number of years, it will often happen that the sheriff who commenced and transacted a part of the business could best protect his interest and that of his sureties by being permitted to wind it up.

It was the evident purpose of this statute to confer upon him the privilege of so doing, unless the court should otherwise order. But it was not the purpose of this act to compel him to discharge these duties of the sheriff after his term of office had expired, unless he

elected to do so. The court could order him to turn the business over to his successor whether he desired to retain it or not. If no such order was made he could either retain the business or turn it over to his successor, as he might elect. When the business was turned over, whether under an order of court, or upon the retiring sheriff's own volition, the incumbent had all the power vested by law in the sheriff to transact the business the same as any other business appertaining to his office as sheriff. The duty of the outgoing sheriff was either to close up the business or turn it over to his successor.

The terms of the sale were one-fourth cash, remainder in six, twelve and eighteen months, the deferred payments to bear six-per-cent. interest, and to be secured by notes with good security. It was the duty of Morgan to collect this money, and, after paying costs, to distribute the remainder in equal parts to plaintiff and Rogers. In the absence of any proof, it is to be presumed that he did his duty, and, as he didn't close up the business during his term, that he turned it over to his successor with the proceeds of the sale in whatever shape they may then have been. How long he remained in office after the sale does not appear, nor who was his immediate successor, nor is this material. The business finally came to the hands of Fish, and in 1867 he acknowledged the receipt of all the purchase money and executed the deed. Under the statute of 1855, no action of the court was required upon a sheriff's report of sale; after its approval, upon payment of the purchase money, the sheriff executed deeds to the purchasers and made distribution among the parties according to their respective rights and interests as found by the court, unless there were adverse claims to one or more shares, in which case he retained the proceeds claimed until the right thereto was determined by the court on the petition of the claimant. R. S. 1855, pp. 1117, 1118, secs. 39, 40, 42, *et seq.* This act was amended in 1865, so as to require an order of distribution after

the report of his proceedings under the order of sale ( G. S. 1865, sec. 39) ; while under the statute of 1855, an appeal would lie from the order approving the sale, which order was treated as a final judgment, and, under the statute of 1865, an appeal could be taken only upon a final order of distribution made after the approval of the sale, yet, under neither statute, did the court lose jurisdiction over its process until finally executed. It had the power to execute its own process.

The order of 1867 was made upon motion, in execution of this power. The motion, together with the exhibits that may have accompanied it, or been on file showing the proceedings of the sheriffs under the order of sale and the then condition of the business were destroyed. In their absence it must be presumed that the court acted upon sufficient evidence ; that upon that evidence it was found that the purchase money had been paid and distributed, and that nothing remained to be done, except for the sheriff to execute a deed to the purchaser. When Morgan voluntarily turned over the business to his successor he ceased to have any power or control over it, and the sheriff to whom it was turned over had just the same right of control and power to finally close up the business as if Morgan had turned it over by order of the court. All power in him to execute a deed ceased, and such deed could only be executed by the sheriff through whom the court could command the final execution of its process, and by whom the deed in question was executed.

The deed was properly executed, and under it the defendant acquired a legal title to the premises, and the court should have so declared and directed a verdict for the defendant. The judgment is for the right party and is affirmed. All concur.